**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

HERC HOLDINGS, INC. AND
HERC RENTALS INC.,

   Plaintiffs,      Case No.:

  v.

JACOB JOHNSON,

   Defendant.

_____/

## <u>COMPLAINT</u>

Plaintiffs Herc Holdings Inc. and Herc Rentals Inc. (collectively, "Company" or "Herc") bring this action for preliminary and permanent injunctive relief and monetary damages against Defendant Jacob Johnson ("Johnson").

Herc is a construction equipment rental company. To accelerate Herc's proven strategy and to strengthen its position as a premier rental company in North America, Herc acquired H&E Equipment Servies, Inc. ("H&E) through a 100 percent stock purchase and merger. With this stock purchase and merger, Herc assumed the right to enforce H&E's restrictive covenant agreements by operation of law, without employee assignment.

Johnson is a former Herc sales employee, originally hired by H&E. Johnson signed a restrictive covenant agreement with H&E, which contained certain restrictive covenants, including non-disclosure, non-solicitation, and non-competition

provisions. Following the merger of Herc and H&E, Johnson became a Herc employee and Herc assumed the right to enforce his restrictive covenants.[1] During his employment, Johnson had access to some of Herc's most protected trade secrets and other confidential and proprietary information, including highly-sensitive information relating to Herc's customers.

Johnson resigned from Herc, effective January 5, 2026, and accepted a position with a direct competitor – Skyworks - to perform competitive duties within his restricted territory. Herc learned of multiple examples where Johnson solicited restricted Herc customers in direct violation of his contractual obligations. After reminding Johnson and Skyworks of Johnson's contractual obligations, Johnson vowed to continue his unlawful competition.

In the short time since Johnson began working for Skyworks, Herc has already lost substantial revenue and fears further irreparable harm to its goodwill and market share will result from Johnson's continued actions. Herc brings this action seeking to recover both monetary and injunctive relief relating to Johnson's numerous breaches of his employment agreement and other unlawful conduct.

---

[1] Where, as here, there is a 100 percent stock purchase and corporate merger, Johnson's restrictive covenants can be enforced by Herc without the need for an assignment. *See Johnson Controls, Inc. v. Rumore*, No. 8:07-cv-1808, 2008 WL 203575, *7 (M.D. Fla. Jan. 23, 2008), *citing Corporate Express Office Products, Inc. v. Phillips*, 847 So.2d 406, 411-414 (Fla. 2003).

## PROCEDURAL AND JURISDICTIONAL FACTS

### The Parties

1.      Plaintiff Herc Holdings Inc. is a Delaware corporation with its principal place of business located at 27500 Riverview Center Boulevard, Bonita Springs, Florida 34134.

2.      Plaintiff Herc Rentals Inc. is a Delaware corporation with its principal place of business located at 27500 Riverview Center Boulevard, Bonita Springs, Florida 34134.

3.      Defendant Johnson is an individual who resides in Gautier, Mississippi and works for Skyworks in its Pensacola, Florida branch.

### Jurisdiction and Venue

4.      Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this dispute because Herc's claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, raise federal questions. Herc's state law claims fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, because the claims relate so closely to the federal questions that those claims form part of the same case or controversy.

5.      Pursuant to 28 U.S.C. § 1332, this Court also has subject matter jurisdiction over this dispute because complete diversity exists between the parties and the amount in controversy exceeds $75,000.00.

6.      Herc consents to personal jurisdiction in this Court by filing this action.

7.    The Court has personal jurisdiction over Johnson because Herc's claims arise out of and relate to Johnson's material contacts with the State of Florida such that Johnson purposefully availed himself of the privilege of conducting activities within the forum, through his specialized training and otherwise, and the exercise of personal jurisdiction is in accordance with traditional notions of fair play and substantial justice.

8.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and § 89(c) because a substantial part of the events or omissions giving rise to Herc's claims occurred in the Northern District of Florida.

**STATEMENT OF FACTS**

Herc is a Premier, Full-Service Equipment Rental Company

9.    Headquartered in Bonita Springs, Florida, Herc is a premier, full-service equipment rental company that provides customers the equipment, services, and solutions they need to achieve optimal performance safely, efficiently, and effectively. With nearly 60 years of equipment rental expertise, approximately 9,900 employees and 612 company-operated branches in the United States and Canada, Herc serves a vast array of customer markets. A pioneer of the equipment rental industry, Herc continues to evolve and grow through technological innovations, expanded product offerings, value-added services and consultative solutions to support customers' projects.

10.    Herc strives to have the best and broadest selection of premium rental equipment available and ready when its customers need it, ensuring it performs as

4

promised and provides unsurpassed customer service at every opportunity. Herc continuously seeks to create a supportive, inclusive, and collaborative work environment that offers excellent career opportunities, along with training and tools to enable its employees' success. And Herc is focused on performing as a top-tier business—operationally and financially—and continuously earning investors' confidence in the team.

11.    In addition to Herc's principal business of equipment rental, Herc sells used equipment and contractor supplies such as construction consumables, tools, small equipment and safety supplies; provides repair, maintenance, equipment management services and safety training to certain of its customers; offers equipment re-rental services and provides on-site support to its customers. Herc also provides ancillary services such as equipment transport, rental protection, cleaning, refueling and labor. The Company also offers its customers financing options for both short- and long-term rentals.

12.    Herc's classic fleet includes aerial, earthmoving, material handling, trucks and trailers, air compressors, compaction and lighting and its equipment rental business is supported by ProSolutions®, its industry-specific solutions-based services, which include power generation, climate control, remediation and restoration, pump, trench shoring, studio and production equipment, and its ProContractor professional grade tools.

13.    Herc has an estimated 5% market share by revenue and 612 locations in 46 states in the United States and 5 provinces in Canada—including many branches

throughout the State of Alabama. Herc has been committed to growing its Alabama market.

Herc's Acquisition of H&E Equipment Services

14. On June 2, 2025, Herc completed its acquisition of H&E pursuant to the merger agreement dated February 19, 2025. At the time of the acquisition, H&E became a subsidiary of Herc Holdings Inc. H&E merged into Herc Rentals Inc., on November 1, 2025.

15. The addition of H&E's network and capabilities provided Herc with a leading presence in 11 of the top 20 rental regions, a larger fleet that provided its customers with a range of specialty and general rental products, and a talented team who share Herc's focus on excellence in customer service and safety.

16. Under the terms of the merger agreement, Herc acquired all of the issued and outstanding shares of H&E's common stock.

Johnson's Employment and Restrictive Covenants with H&E

17. Johnson worked for H&E as an Outside Sales Representative serving customers in Alabama and Mississippi.

18. On or about December 30, 2022, Johnson entered the Confidentiality, Non-Competition, and Non-Solicitation Agreement (Ex. 1, "RCA") with H&E.

19. As stated in the RCA, Johnson entered into the RCA

in consideration of the mutual promises and covenants set forth herein, the continued employment by [the Company] of Employee on an at-will basis, and [the Company's] agreement to provide the Employee with confidential, proprietary, and trade secret information and data, the receipt and sufficiency of which Employee acknowledges, Employee hereby agrees [.]

6

*Id.* at p. 1.

20.    In connection with all restrictive covenants in the RCA, Johnson acknowledged that the restrictive covenants, including the duration and geographic scope, are "reasonable and necessary in order for [the Company] to protect good will, customer relationships and information employee acquired during the employment relationship" and enforcement of such restrictive covenants "will not impose an undue hardship or burden on employee and they will not unduly restrict employee's ability to obtain a livelihood. *Id*. at § 2(f).

21.    Johnson further agreed that, "[s]ince monetary damages will be inadequate and Company will be irreparably damaged if the provisions of this Agreement are not specifically enforced, Company shall be entitled, among other remedies, (a) to an injunction restraining any violation of this Agreement (without any bond or other security being required, to the extent permitted by the applicable law . . ., (b) to require Employee to hold, in a constructive trust, account for and pay over to Company all compensation and other benefits which Employee shall derive as a result of any action or omission which is a violation of any portion of this Agreement, (c) to require Employee to account for and pay over to the Company any bonus received by Employee during the twelve-month period immediately preceding termination of Employee's employment, and (d) to require the Employee to account for and pay over to Company any net profit earned by Employee from the exercise, during the twelve

(12) month period prior to the termination of Employee's employment, of any stock options issued to Employee by Company." *Id*. at § 3.

22.    Johnson also agreed that, in the event a court determines that there has been a breach or threatened breach or repudiation of any of the restricted covenants by Johnson, Johnson agreed that in addition to injunctive relief and monetary damages, the Company "shall be entitled to recover reasonable attorney's fees and costs incurred in connection with any proceeding from the non-prevailing party. Id. at § 4.

23.    Johnson further agreed that, "[t]he courts enforcing this Agreement shall be entitled to modify the duration and scope of any restriction contained herein to the extent such restriction would otherwise be unenforceable and such restriction as modified shall be enforced." *Id.* at § 5(c).

24.    The RCA contains a tolling provision which provides that the time period set forth in the non-competition and non-solicitation restrictive covenants "shall be computed by excluding from such computation any time during which Employee is in violation of any provision of this Agreement and any time during which there is pending in any court of competent jurisdiction any action (including any appeal from any final judgment) brought by any person, whether or not a party to this Agreement, in which action Company seeks to enforce the agreements and covenants in this Agreement or in which any person contests the validity of such agreements and covenants or their enforceability or seeks to avoid their performance or enforcement. *Id.* at § 2(e).

25.     The restrictions at issue and relevant here are the (a) confidentiality and company property provision (*id.* at § 1(a)-(f)) ("Confidentiality Provision"); and (b) non-competition and non-solicitation provision (*id.* at § 2(a)-(d) ("Non-Competition and Non-Solicitation Provision").

*Confidentiality Provision*

26.     In the RCA, Johnson acknowledged that "in connection with [his] employment, [he would] receive and have access to [the Company's] confidential, proprietary, and trade secret information and data." (*Id.* at p.1.)

27.     Based on the sensitive nature of the Company's confidential and proprietary information and trade secrets, Johnson agreed as follows:

1. <u>Confidentiality and Company Property.</u> During and at all times after Employee's employment:

   (a) Employee will not disclose to any person or entity, without Company's prior consent, any confidential, proprietary, and trade secret information and data, whether prepared by Employee or others;

   (b) Employee will not directly or indirectly use any such information other than as directed by Company in writing and in furtherance of the Business of the Company;

   (c) Employee will not, except in the furtherance of the Business of Company, remove confidential, proprietary, and trade secret information and data from the premises of Company without the prior written consent of Company;

   (d) All products, correspondence, reports, records, software, data compilations, charts, advertising materials, designs, plans, manuals, "field guides," memoranda, lists, and other property compiled or produced by Employee or delivered to Employee by or on behalf of Company or by its customers (including, but not limited to, customers obtained by Employee), whether or not confidential, shall be and remain the property of Company and shall be subject at all times to its direction and control;

9

(e) Employee will, upon termination of Employee's employment for whatever reason, with or without cause, promptly deliver to Company all originals and copies (whether in note, memo, or other document form, or on video, audio, or computer tapes or disks, or otherwise) of all confidential, proprietary, and trade secret information and data, and of all property referred to in Section l(d), that is in Employee's possession, custody, or control, whether prepared by Employee or others, and regardless of how contained or stored.

(f) "Confidential, proprietary, and trade secret information and data" includes, but is not limited to: business, pricing, and management methods and techniques; training; finances, strategies, systems, research, surveys, plans, reports, recommendations, and conclusions; names and contact information of, arrangements with, or other information relating to, Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives, and other persons who have business relationships with Company or who are prospects for business relationships with Company; technical information, work products, and know-how; performance evaluations and the particulars of function of other employees of [the Company]; trade secrets; and, cost, operating, and other management information systems, and other software and programming.

*Id.* at § 1(a)-(f).

28.    The RCA defines the Company's "Business" as "the business of selling, renting, servicing, maintaining, and otherwise dealing in or with construction equipment, heavy industrial equipment, material handling equipment, and utility equipment (new and used), and related parts, implements, or similar assets. (*Id.* at p. 1.)

*Non-Competition and Non-Solicitation Provision*

29.    Through the RCA, Johnson agreed to the following restriction on competition:

2.    Non-Competition and Non-Solicitation

(a) During Employee's employment by Company and for a period of twelve (12) months immediately following the termination of Employee's employment for any reason whatsoever, whether or not for cause, Employee will not, directly or indirectly (whether through affiliates, relatives, or otherwise), in any Restricted Area:

(i) be employed or retained by any person or entity who or which then competes with Company and its Business to any extent, nor will Employee directly or indirectly own any interest in any such person or entity or render to it any consulting, brokerage, contracting, financial, or other services, or render to it any advice, assistance, or other accommodation;

(ii) solicit or accept the business of, or call upon, any person or entity who or which is or was (A) a customer, supplier, manufacturer, finder, broker, or other person who had a business relationship with Company, or who was a prospect for a business relationship with Company, at any time during the period of Employee's employment, or (B) an affiliate of any such person;

(iii) approve, solicit, or retain, or discuss the employment or retention (whether as an employee, consultant, or otherwise) of, any person who was an employee of Company at any time during the twelve- month period preceding the termination of Employee's employment by Company;

(iv) solicit or encourage any person to leave the employ of Company; and

(v) own any interest in or be employed by or provide any services to any person or entity, which engages in any conduct, which is prohibited to Employee under this Section 2(a).

*Id.* at § 2(a)(i)-(v).

30.     The RCA defines "Restricted Area," as "each county in Alabama in which Employee performed services at any time during the twelve-month period

11

proceeding the termination of Employee's employment with Company." *Id.* at §

2(b)).

31.    For purposes of the Non-Competition and Non-Solicitation provision, Johnson agreed that he "shall be deemed to be employed or retained in the Restricted Area if Employee has an office in the Restricted Area or if Employee performs any duties or renders any advice with respect to any facility or business activities in the Restricted Area. (*Id.* at § 2(c)).

<u>Johnson's Employment and Restrictive Covenants with Herc</u>

32.    Following the acquisition and merger, Herc became Johnson's employer.

33.    Herc assumed the right to enforce Johnson's 2023 Confidentiality, Non-Competition and Non-Solicitation Agreement.

34.    Johnson's job title was changed to Territory Sales Representative ("TSR"). His duties remained unchanged.

35.    TSRs are responsible for identifying, introducing, developing, and nurturing business relationships with companies and individuals within their designated territory. More specifically, a TSR is responsible for: (a) daily territory management and revenue growth through visits to various customer job sites/offices; (b) developing a networking list of potential clients and consistently contacting them through the telephone and internet; (c) developing, planning and organizing sales strategies to achieve desired results/goals; (d) maintaining and exceeding quotas by renting and selling equipment on a consistent basis; (e) identifying customers' needs and reacting appropriately while understanding the market conditions and local

competitors' pricing; (f) penetrating customers at the strategic level to diversify customer base to include industrial, traditional and nontraditional accounts; and (g) supporting all team members.

36.    As a TSR for Herc, Johnson worked out of the Theodore, Alabama branch with a territory encompassing the southeast Mobile area.

37.    To ease transition, Herc provided Johnson with a one-year guaranteed commission in addition to his salary based on his prior year's earnings.

38.    Herc also provided Johnson with specialized training designed to give Johnson the skills necessary for him to succeed as a TSR for Herc.

39.    Johnson worked for Herc as a TSR until he resigned on January 5, 2026.

Johnson's Access to Confidential Information Including Trade Secrets

40.    As a TSR, Johnson had access to a great deal of highly-confidential information and trade secrets - information which Herc vigorously protects from competitors. For example, Herc permitted Johnson to access, and he regularly used, the following categories of confidential information in performing his job duties: (a) customer contact information, pricing and budgetary information, and customer needs and/or requirements, among other things; (b) vendor lists, including pricing information and related information; (c) information relating to contracts between Herc and its customers; (d) pricing models; (e) competitive intelligence regarding Herc's competitors; (f) account strategies regarding Herc's past and/or current customers; and (g) Herc's organization and marketing and growth strategies.

41.     The above-referenced confidential information and trade secrets, all of which the Company authorized Johnson to access while serving as Herc's employee, are highly sensitive, commercially valuable, and would be extremely useful to Skyworks and other competitors in their efforts to compete with Herc for business and market share.

42.     Herc invests substantial time, money, and other resources both to develop this confidential information, and takes (and has always taken) reasonable measures to protect it from dissemination to competitors and others outside of the company. These measures include, but are not limited to: (a) encrypting data on company-owned devices as well as devices with access to company data; (b) password protecting all company-owned devices and requiring that all devices with access to company data are password protected; (c) taking reasonable measures to limit the disclosure and distribution of such information to individuals who need access to such information to perform their job responsibilities; (d) requiring all employees to affirm, as part of their employment offer, that they will maintain the confidentiality of Herc's confidential and proprietary information and trade secrets; and (e) requiring employees to enter into restrictive covenant agreements that expressly prohibit the dissemination of  Herc's trade secrets and confidential information for the use or benefit of any entity or person other than Herc.

43.     Accordingly, the above-referenced trade secrets and confidential information are not generally known to the public.

14

44.     With access to highly sensitive confidential information and trade secrets, Johnson has the knowledge necessary to engineer a strategy which would allow a competitor, such as Skyworks, to unfairly and unlawfully compete with Herc.

<u>Herc's Legitimate Business Interests</u>

45.     The equipment rental industry serves a diverse group of customers from individuals and small local contractors to large national accounts providing a wide variety of rental equipment including mid-size and heavy equipment, specialty equipment and contractor tools. The equipment rental industry is highly fragmented with few national competitors and many regional and local operators.

46.     The growth and financial health of the North American equipment rental industry is driven by a number of factors including economic trends, non-residential construction activity, capital investment in the industrial sector, repair, maintenance and overhaul spending, government spending and demand for construction and other rental equipment generally, including for remediation and re-building efforts related to natural disasters.

47.     Accordingly, Herc's business is highly competitive. For this reason, Herc spends substantial time, money, and effort on the development of budgets, effective marketing strategies, forecasting, compliance practices, operations, customer and business relationships, business plans, pricing, policies, procedures, training methods, and employee policies designed to enable the Company to maintain its competitive edge and excel in the industry.

48.     Herc relies on a foundation of trust and loyalty between it and its employees to promote the business model.

49.     The restrictive covenants signed by the Company's employees include clauses such as confidentiality clauses, non-solicitation clauses, and agreements to return confidential information and trade secrets. Each restrictive covenant is limited in scope to protect Herc's legitimate business interests while preventing undue hardship on the employee in his or her pursuit of employment in his or her area of expertise.

50.     Herc's legitimate business interests include, but are not limited to, confidential and proprietary information; trade secrets; market share in the industry; relationships with customers, vendors, referral sources, and employees; and Plaintiff's reputation and goodwill in the industry.

<u>Skyworks Competes Directly with Herc</u>

51.     Skyworks, L.L.C. ("Skyworks") holds itself out as a trusted provider of construction equipment rentals, part sales, and service with branches across the East Coast in New York, New Jersey, Pennsylvania, Ohio, Indiana, Illinois, Kentucky, Michigan, Georgia, Alabama, and Florida. Skyworks has 27 physical locations throughout New York, New Jersey, Pennsylvania, Ohio, Indiana, Illinois, Kentucky, Michigan, Georgia, Alabama, and Florida.

52.     Skyworks is a New York LLC, with a principal place of business in Buffalo, New York. Skyworks is a foreign limited liability company licensed to do business in Florida. It has a branch in Pensacola, Florida.

16

53.     Like Herc, Skyworks rents and sells used equipment and contractor supplies, provides repair, maintenance, equipment management services and safety training to certain of its customers, provides ancillary services such as equipment transport, rental protection, cleaning, refueling and labor, and offers its customers financing options for both short- and long-term rentals.

54.     Upon information and belief, Skyworks is focused on growing its market share in the rental business by, among other things, recruiting Herc's employees - including those who are subject to restrictive covenants - in an effort to unlawfully emulate Herc's business model by interfering with Herc's contracts and business relationships.

<u>Johnson Accepts a Position with Skyworks</u>

55.     Johson voluntarily resigned from Herc, effective January 5, 2026.

56.     The Company recently learned that Johnson accepted a position with Skyworks as an Outside Sales Representative based in Skyworks' Pensacola, Florida branch.

57.     Johnson's Skyworks' territory includes Bay Minette, Alabama, Bayou La Batre, Alabama, and Mobile, Alabama, all of which fall within the "Restricted Area" as defined in the RCA.

58.     Upon information and belief Johnson's job duties for Skyworks are the same or similar to the job duties Johnson performed as a TSR for Herc.

59.     Johnson has also unlawfully solicited several Herc customers with whom he developed relationships while at Herc. These customers include but are not limited

17

to Persons Services, Bayou La Batre, Novelis, White Spunner Construction, Regional Erectors, and jobs at the Baldwin County Court House and the Mobile Civic Center.

60. As soon as practicable after learning that Johnson had accepted a position with a direct and primary competitor of Herc, Herc sent a cease and desist letter to Johnson reminding him of his obligations under the RCA and detailing his clear violations of the RCA. (Ex. 2, March 9, 2026, Cease and Desist to Johnson.)

61. Herc's cease and desist letter further reminded Johnson of his remaining obligations under the terms of the RCA. (*Id.*)

62. Johnson has still not confirmed, in writing, that he is complying with the restrictions set forth in his RCA. Instead, Johnson's counsel sent a response letter to Herc tacitly confirming that: (a) Skyworks and Johnson were aware that Johnson signed the RCA; and (b) that Johnson is continuing to violate the RCA. (Ex. 3, March 16, 2026, Response Letter from Johnson's Counsel.)

63. Upon information and belief, Johnson is violating and will continue to violate the restrictive covenants contained in his RCA.

64. Upon information and belief, Johnson is using, and will continue to use, Herc's Confidential Information to unfairly and unlawfully compete with Herc.

Herc is Harmed by Johnson's Breaches of Contract and Tortious Conduct

65. Since Johnson began with Skyworks, Herc has experienced several lost opportunities with customers in Johnson's region for Skyworks.

18

66.    Herc has lost substantial revenue which losses Herc alleges, upon information and belief, are attributable directly to Johnson's ongoing breaches under the RCA and/or other unlawful conduct and the costs of mitigation.

67.    Upon information and belief, Johnson, in concert with Skyworks, intends to emulate Herc's business model by, among other things, using Herc's Confidential Information to unlawfully compete with it.

68.    Upon information and belief, Herc alleges that Johnson played, and continues to play, a direct role in soliciting Herc's current and/or former customers to abandon their business relationship with Herc and to enter into a similar business relationship with Skyworks—in direct violation of his obligations under the RCA.

69.    Herc alleges, upon information and belief, that Johnson's actions have adversely impacted and will continue to adversely impact the Company's goodwill and profits.

70.    The Company further contends, upon information and belief, that with respect to Johnson's unlawful conduct, Johnson acted specifically in the interest of, and with the knowledge and support of, Skyworks.

<u>Herc's Entitlement to Injunctive Relief</u>

71.    Herc has clearly ascertainable rights in need of protecting including to: (a) preserve and maintain the integrity of its Confidential Information together with the goodwill and market share it expended significant time and resources to create; (b) prevent Johnson from violating the bargained-for provisions contained in his RCA;

19

and (c) prevent Johnson from unlawfully and unfairly competing with Herc through his position with Skyworks.

72.    The RCA is a valid and enforceable contract that prohibits Johnson from, among other things: (a) working for a competitor of Herc for one year following his separation of employment; (b) soliciting Herc's employees for one year following his separation of employment; (c) soliciting Herc's customers for one year following his separation of employment; and/or (d) disclosing or otherwise using Herc's Confidential Information.

73.    Herc fully performed its obligations under the RCA.

74.    Johnson has engaged in and is continuing to engage in conduct that constitutes a material breach of numerous provisions in the RCA and is otherwise unlawful.

75.    Herc has suffered and will continue to suffer irreparable harm and economic damages as a result of Johnson's unlawful conduct. Moreover, Herc has an urgent need to protect its legitimate business interests.

76.    There is no adequate remedy at law that might address the irreparable injury caused by Johnson's actions. Absent relief, Herc will continue to lose market share to Skyworks, directly or indirectly as a result of Johnson's actions. There is no way to accurately forecast the effect on Herc's business over time, or the extent of the long-term damages due to Johnson's actions.

77.    Herc is likely to prevail on the merits in this action. Should Herc be required to wait until a full trial on the merits to enforce its legal rights, however, it

will be irreparably harmed because it will continue to lose business, goodwill, and customers that may never be recovered.

78.    Injunctive relief is not contrary to the public health, safety, or welfare. Moreover, issuing injunctive relief will serve the public interest and the harm to Herc absent the requested relief strongly outweighs the risk of harm to Johnson should injunctive relief be granted.

79.    Herc has been required to retain the law firm of Ogletree Deakins to represent it in this action and have been obligated to pay the firm a reasonable fee for its services.

## CAUSES OF ACTION

### Count I – Breach of Contract

80.    Herc hereby repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1-79 above as if fully set forth herein.

81.    The contractual provisions below, contained in the RCA, are valid and enforceable contractual obligations between Johnson and Herc.

82.    Johnson received valuable consideration for the restrictive covenants.

83.    As described in more detail both above and below, Johnson breached these contractual provisions.

84.    Herc further alleges, upon information and belief, that Johnson intends to further breach those provisions in the future.

85.    By breaching these valid and enforceable contractual provisions in the RCA, Johnson has caused damages to Herc in an amount that is currently unknown but which will be calculated in discovery and before trial.

86.    Herc has suffered and will continue to suffer damages and irreparable harm as a result of Johnson's actions.

### *Non-Disclosure and Return of Company Property Provisions*

87.    Herc alleges, upon information and belief, that Johnson is still in possession of its property, including but not limited to Herc's Confidential Information.

88.    Johnson has not returned Herc's Confidential Information.

89.    The Company further alleges, upon information and belief, that Johnson has used, is using, and will continue to use Herc's Confidential Information for his own benefit and/or for the benefit of Skyworks.

90.    Herc has suffered and will continue to suffer damages and irreparable harm as a result of Johnson's actions.

### *Non-Competition and Non-Solicitation Provision*

91.    The Non-Competition and Non-Solicitation Provision prohibits Johnson from being employed by any person or entity who or which "competes with the Company and its business to any extent" in "each county in Alabama in which [Johnson] performed services at any time during the twelve-month period preceding the termination of his employment with the Company." (Ex. 1, RCA at § 2(a)(i); § 2(b).)

92. The one-year period in the Non-Competition and Non-Solicitation Provision, however, is tolled during the period which Johnson is in breach. (*Id.* at § 2(e).)

93. Accepting a similar position for Skyworks servicing Bay Minette, Alabama, Bayou La Batre, Alabama, and Mobile, Alabama constitutes a direct breach of the Non-Competition and Non-Solicitation Provision.

94. The Non-Competition and Non-Solicitation Provision in the RCA also prohibits Johnson from soliciting or attempting to solicit or accept the business of "a customer, supplier manufacturer, finder, broker, or other person who had a business relationship with the Company, or who was a prospect for a business relationship with the Company, at any time during [Johnson's] employment" or employees of the Company, and/or aiding, assisting, or counseling anyone else to do so for a period of one year following his separation from Herc—which period is tolled during a period of breach. (*Id.* at § 2(a)(ii)-(iv), (e).)

95. Johnson resigned from Herc, effective January 5, 2026, and began working for Skyworks the very same day. Thus, the restrictive period of the Non-Competition and Non-Solicitation Provision does not expire until twelve months after Johnson cures his breach under that Provision

96. Herc alleges, upon information and belief, that Johnson has violated—and will continue to violate—the Non-Solicitation Provision in connection with his work for Skyworks.

97.    Herc has suffered and will continue to suffer damages and irreparable harm as a result of Johnson's actions.

### Count II – Violations of the DTSA, 18 U.S.C. § 1831 *et seq.*

98.    Herc hereby repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1-79 above as if fully set forth herein.

99.    While employed by Herc, Johnson had access to the Company's Confidential Information, including client information, pricing and business strategy information, sales strategies and techniques, marketing strategies and information, and other financial information, among other things discussed above.

100.    Herc expended substantial time, effort, money, and resources in acquiring, developing and maintaining its Confidential Information.

101.    Herc takes reasonable, affirmative measures to maintain the confidentiality of this information for Herc's exclusive benefit and competitive advantage in the industry.

102.    Herc's Confidential Information constitutes Herc's trade secrets for purposes of the Defend Trade Secrets Act.

103.    Johnson had, and has, a duty not to use or disclose Herc's Confidential Information for his own benefit or for that of a competitor.

104.    Upon information and belief, Herc has wrongfully retained Herc's Confidential Information and is using and/or disclosing such information for his benefit and that of Skyworks.

24

105.   Johnson's actions were and continue to be, upon information and belief, willful and malicious.

106.   As a direct and proximate result of Johnson's misappropriation of Herc's Confidential Information, Herc has suffered, and will continue to suffer, irreparable harm and economic damages.

## Count III – Violations of the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.*

107.   Herc hereby repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1-79 above as if fully set forth herein.

108.   While employed by Herc, Johnson had access to the Company's Confidential Information, including client information, pricing and business strategy information, sales strategies and techniques, marketing strategies and information, and other financial information, among other things discussed above.

109.   Herc expended substantial time, effort, money, and resources in acquiring, developing and maintaining its Confidential Information.

110.   Herc takes reasonable, affirmative measures to maintain the confidentiality of this information for Herc's exclusive benefit and competitive advantage in the industry.

111.   Herc's Confidential Information constitutes Herc's trade secrets for purposes of the Florida Uniform Trade Secrets Act.

112.   Johnson had, and has, a duty not to use or disclose Herc's Confidential Information for his own benefit or for that of a competitor.

113.    Upon information and belief, Johnson has wrongfully retained Herc's Confidential Information and is using and/or disclosing such information for his benefit and that of Skyworks.

114.    Johnson's actions were and continue to be, upon information and belief, willful and malicious.

115.    As a direct and proximate result of Johnson's misappropriation of Herc's Trade Secrets, Herc has suffered, and will continue to suffer, irreparable harm and economic damages.

**<u>Count IV – Tortious Interference with
Herc's Advantageous Business Relationships</u>**

116.    Herc hereby repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1-79 above as if fully set forth herein.

117.    Herc has advantageous business relationships with its customers and prospective customers.

118.    The Company's customer base and customer relationships have been developed by it over an extensive period of time and at great expense.

119.    Herc has a reasonable expectancy of maintaining and entering into valid business relationships with their customers and prospective customers.

120.    Johnson knew or should have known that customer relationships are crucial to Herc.

121.   Upon information and belief, Johnson intentionally and unjustifiably interfered—and continues to interfere—with Herc's advantageous business relationships with its customers, prospective customers, and their representatives.

122.   Upon information and belief, by improper means, and without authorization from Herc, Herc unlawfully retained the Company's Confidential Information which he has used in order to solicit Herc's customers and prospective customers to divert business from Herc to Skyworks, and to otherwise engage in unfair and unlawful competition.

123.   Johnson's interference is without justification or privilege and has prevented—and continues to prevent—Herc from realizing its business expectancy.

124.   Upon information and belief, Herc suffered and continues to suffer irreparable harm and economic damages (including lost sales, lost profits, loss of business opportunities, and loss of goodwill and competitive advantage) as the direct and proximate result of Johnson's unlawful interference.

## **Request for Relief**

Herc respectfully requests that this Court enter judgment for the Company and against Johnson as follows:

A.   Temporarily, preliminarily and permanently enjoining Johnson from continuing to violate any of his obligations under his RCA including, but not limited to, enjoining him from continuing to perform competitive services for Skyworks and award Herc all damages to which it may recover under applicable law suffered as the direct and proximate result of Johnson's breaches;

B.      Temporarily, preliminarily and permanently enjoining Johnson from acquiring, accessing, using, disclosing, or misappropriating the Company's Confidential Information and award Herc all damages to which it may recover under applicable law cause as the direct and proximate result of Johnson's conduct, including recovery of its attorneys' fees;

C.      Ordering Johnson to immediately return to Herc any and all of its electronic and hardcopy Trade Secrets and/or Confidential Information and to take all steps necessary to effectuate a forensic examination of any and all devices capable of performing computing functions or storing electronic information that are owned by, have been used by, or been accessible to Johnson at any time since the date six months prior to the date on which his employment with Herc terminated for the purpose of determining how he has accessed, used, disclosed, or misappropriated the Company's Trade Secrets and/or Confidential Information;

D.      Granting Herc access to any and all personal accounts used for communication purposes by Johnson so that Herc may determine the extent to which Johnson (1) retained, used, or disclosed any of the Trade Secrets and/or Company's Confidential Information, and/or (2) took other actions toward violating his obligations under the RCA;

E.      Granting the Company access to any and all electronic devices owned, used or accessed by Johnson for the purpose of determining if such devices contain copies of Herc's Confidential Information, and permitting Herc to take any other appropriate and reasonable steps to recover its Trade Secrets and/or Confidential

28

Information and to ensure none of Herc's Trade Secrets and/or Confidential Information were distributed or preserved by Johnson in any form;

F.    Restraining Johnson from in any way divulging, disseminating, or utilizing Herc's Trade Secrets and/or Confidential Information in the interim; and

G.    Entering judgment against Johnson, and award Herc all damages available under applicable law together with prejudgment and post-judgment interest, costs, attorneys' fees and such other and further relief, at law or in equity, as the Court deems just.

Dated:  March 27, 2026.

Respectfully submitted,

*/s/ Caren S. Marlowe*
Caren S. Marlowe, Esq.
Florida Bar No.: 514586
caren.marlowe@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.**
100 North Tampa Street, Suite 3600
Tampa, FL 33602
Telephone: (813) 289-1247
Facsimile: (813) 289-6530

***ATTORNEY FOR PLAINTIFFS***

29